SECOND DIVISION
MARCH 8, 2011

No. 1-10-0521

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 08 CH 47632 |
| | ) | |
| FCL BUILDERS, INC., | ) | Honorable |
| | ) | Daniel A. Riley, |
| Defendant-Appellant, | ) | Judge Presiding. |
| | ) | |
| (Anwar Oshana, | ) | |
| | ) | |
| Defendant). | ) | |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Karnezis and Harris concurred in the judgment and opinion.

## OPINION

Defendant FCL Builders, Inc. (FCL), appeals from the circuit court's order granting

summary judgment in favor of plaintiff Westfield Insurance Company (Westfield). The circuit

court found that FCL was not an additional insured under the insurance policy that Westfield had

issued to a third party, JAK Iron Works, Inc. (JAK). We affirm.

### BACKGROUND

FCL is a general contractor that was hired to work on a construction project. FCL

subcontracted out the steel fabrication and erection for the project to Suburban Ironworks, Inc.

(Suburban), which in turn further subcontracted out the steel erection to JAK. JAK employed

defendant Anwar Oshana.

FCL's subcontract with Suburban required Suburban to perform all structural steel work

for the project. The contract also required Suburban to obtain a certain amount of commercial

general liability (CGL) insurance, which would cover not only Suburban and its employees but

also FCL as the general contractor. Importantly for this case, the contract mandated that any subcontractors that Suburban might further subcontract with must also maintain the same level of CGL insurance and include FCL as an insured under the policy.

When Suburban subcontracted the steel erection work to JAK, Suburban and JAK executed a contract that incorporated by reference a previously existing Master Subcontract Agreement between the two parties. The master agreement included a provision that required JAK to obtain the same level of insurance coverage that was required by the contract between FCL and Suburban, the terms of which were also incorporated by reference into the JAK-Suburban contract. In short, JAK was contractually required to purchase an insurance policy that would cover itself, Suburban, and FCL in the event of a mishap on the steel erection job. JAK duly purchased a CGL policy from Westfield. The policy contained an endorsement that amended the definition of "insured" under the contract. The endorsement reads, in pertinent part:

> "A. *Section II – Who Is an Insured* is amended to include as an additional insured any person or organization for whom you are performing operations when you and such a person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy."

The policy came into effect in October 2005, and JAK began erecting steel on the job site. Unfortunately, about a month into the job, JAK's employee Oshana was severely injured when he fell off of a steel beam. Oshana later filed a tort lawsuit against FCL and Suburban, alleging the breach of various duties of care regarding job site safety that they allegedly owed to

Oshana.

It is at this point that the dispute that is the subject of this appeal arose. FCL turned to Westfield for defense against Oshana's lawsuit and for indemnification in the event that it was successful. However, Westfield refused to either defend or indemnify FCL, asserting that FCL did not qualify as an additional insured under its policy with JAK. The parties were unable to resolve the matter, and Westfield filed the instant declaratory judgment action, seeking a declaration that it was not obligated to either defend or indemnify FCL in Oshana's underlying tort action.

Following discovery, the parties filed cross-motions for summary judgment. Westfield argued that the plain language of the additional insured provision of the policy only extended coverage to entities that had an agreement in writing with JAK for them to be added to the policy as additional insureds. Westfield asserted that, because JAK only had a contract with Suburban, FCL could not be an additional insured. FCL maintained that it met the requirements of the policy provision due to the fact that the JAK-Suburban contract incorporated by reference the terms of the Suburban-FCL contract, which contained the provision requiring FCL to be an additional insured on the insurance policy and thus satisfied the written-agreement requirement. Additionally, FCL pointed to deposition testimony to the effect that JAK and Suburban had understood that JAK would be required to add FCL as an additional insured under any policy that JAK later purchased. Finally, FCL noted that it had received a certificate of insurance that listed FCL as an additional insured under JAK's policy with Westfield.

After full briefing by all parties and extensive oral arguments, the circuit court held that FCL was not an additional insured under the policy. The circuit court found that the policy

provision was unambiguous and required what the court termed "direct priv[i]ty in order for an entity to qualify as an additional insured." The circuit court accordingly denied FCL's motion for summary judgment and granted Westfield's motion. With no other issues remaining in the case, FCL timely filed a notice of appeal. This case is now before us.

ANALYSIS

This case comes to us following summary judgment in Westfield's favor. Summary judgment is appropriate only where the pleadings, depositions, admissions and affidavits, viewed in the light most favorable to the nonmovant, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2008). "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). We review an order granting summary judgment *de novo*. See *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 400 (2010).

The sole issue on summary judgment below and now on appeal is whether FCL qualifies as an additional insured under the insurance contract. Our primary duty in construing an insurance contract is "to ascertain and give effect to the intentions of the parties as expressed in the agreement. If insurance policy terms are clear and unambiguous, they must be enforced as written unless doing so would violate public policy." *Schultz*, 237 Ill. 2d at 400. However, "[a] policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. [Citation.] Rather, an ambiguity will be found where the policy language is susceptible to more than one reasonable interpretation. [Citations.]" *Founders Insurance Co. v.*

4

No. 1-10-0521

*Munoz*, 237 Ill. 2d 424, 433 (2010).

The provision at issue in this case is the endorsement that modified the definition of insured under the contract. The plain language of the endorsement requires two conditions to be met in order for an entity to qualify as an additional insured under JAK's policy with Westfield. First, the entity must be one "for whom you [JAK] are performing operations." Second, JAK and that entity must "have agreed in writing in a contract or agreement" that the entity be added to the policy as an additional insured.

The second condition is dispositive here. Even assuming, without deciding, that JAK was "performing operations" for FCL within the meaning of the policy, there is no evidence in the record that JAK had agreed in writing with FCL for FCL to be an additional insured. The policy explicitly and unambiguously requires a direct, written agreement to that effect in order to cover anyone other than JAK under the policy. Because no such written agreement ever existed between FCL and JAK, FCL cannot be an additional insured under the policy and Westfield is not obligated to furnish FCL with a defense or indemnification in Oshana's tort lawsuit. Summary judgment for Westfield was therefore proper.

FCL offers three arguments in support of a contrary result, which we will address in turn. FCL initially points to the contract between Suburban and JAK, which incorporated the terms of the FCL-Suburban contract. FCL argues that the terms of the JAK-Suburban contract obligated JAK to include FCL as an additional insured in the CGL policy that it purchased from Westfield, and that this contractual obligation is sufficient to satisfy the additional insured provision of the insurance contract.

FCL's argument on this point is flawed for several reasons. First, FCL's position is not

5

supported by the plain language of the insurance policy. The policy provision defines an additional insured as "any person or organization for whom you are performing operations when you *and such a person or organization* have agreed in writing in a contract or agreement *that such person or organization* be added as an additional insured." (Emphasis added.) The plain and ordinary meaning of the term "such person or organization" in this provision is that it refers back to the same person or organization for whom JAK is performing operations, which was mentioned earlier in the same provision, and it does not encompass any other entity. See Black's Law Dictionary 1446 (7th ed. 1999) (defining "such" as "[o]f this or that kind," and as "[t]hat or those; having just been mentioned"). Notably, the provision does not refer to *any* person or organization. By repeatedly using the term "such" instead of "any," the provision necessarily requires that, in order to qualify as an additional insured, an entity must enter into a direct written agreement with JAK listing them as additional insured.

Second, FCL's position assumes that if JAK had a contractual obligation to Suburban to list FCL as an additional insured and JAK subsequently bought a CGL policy from Westfield, then FCL must necessarily be an additional insured under that policy. However, the question in this case is not JAK's contractual obligations to Suburban, much less any potential obligations to FCL as a third-party beneficiary of the JAK-Suburban contract. Instead, the question is Westfield's contractual obligations to its insureds, and those obligations are controlled by the insurance contract itself. The additional insured provision in this case unambiguously limits Westfield's obligations to only JAK and those entities with whom JAK directly contracts in writing for additional coverage. Regardless of whether JAK and Suburban had agreed that FCL should be an additional insured, JAK and FCL did not agree in writing that FCL was an

6

additional insured. The terms of the FCL-Suburban contract and the Suburban-JAK contract are consequently irrelevant to whether Westfield is obligated to cover FCL as an additional insured under this particular policy provision.

FCL's position relies heavily on the case of *West American Insurance Co. v. J.R. Construction Co.*, 334 Ill. App. 3d 75 (2002). *West American* also dealt with an additional insured provision, and in that case the insurance company also argued that a direct written contract between the general contractor and the primary insured was required to cover any additional insured. See *id.* at 80. The court held that the general contractor was an additional insured, noting that (1) a certificate of insurance naming the general contractor as an additional insured had been issued, (2) the general contractor and the primary insured had orally agreed to add the general contractor to the policy as an additional insured, and (3) the insurance company wrote a letter and several memoranda purporting to accept the general contractor as an additional insured. See *id.* at 81. FCL argues that *West American* should guide the outcome in this case because of the presence of the Suburban-JAK contract that incorporated the Surburban-FCL contract, as well as the certificate of insurance listing FCL as an additional insured.

*West American* is readily distinguishable from this case. FCL's reliance on *West American* is misplaced because the additional insured provision in *West American* differs in crucial respects from the additional insured provision in the Westfield insurance contract. The *West American* provision defined additional insured as " 'any person or organization who you are required to name as an additional insured on this policy under a written agreement or contract.' " *Id.* at 80. This provision is broader than the Westfield provision at issue here. Unlike the Westfield provision, the *West American* provision encompasses *any* entity that the primary

7

insured was contractually required to name as an additional insured, regardless of whether the primary insured and that entity have a direct written contract. As discussed above, the Westfield provision has different requirements and is significantly narrower in scope. Because the policy provision that was at issue in *West American* is not the same as the one at issue here, *West American* has no bearing on whether FCL is an additional insured in this case.

FCL next argues that the evidence in the record demonstrates that JAK and Suburban intended for FCL to be an additional insured under the policy. FCL points to deposition testimony of both the owner of Suburban and the superintendent of JAK, during which they affirmed that it was their intent under the Suburban-JAK contract that FCL would be an additional insured under the Westfield policy. However, this testimony is irrelevant to our inquiry. As we have already stated, our primary objective is to determine the parties' intent, but the best evidence of that intent is the contract itself. See *Schultz*, 237 Ill. 2d at 400. We may only consider extrinsic evidence outside of the contract if the contract is ambiguous. See *Gallagher v. Lehnert*, 226 Ill. 2d 208, 233 (2007). The policy provision in this case is not ambiguous, and it is therefore inappropriate to consider extrinsic evidence such as deposition testimony when interpreting it. Moreover, even if extrinsic evidence were necessary in order to determine the intent of the parties to the insurance contract, the deposition testimony refers only to what Suburban and JAK intended regarding their respective obligations under the Suburban-JAK contract. The deposition testimony consequently has no relevance to what JAK and Westfield intended for their respective obligations to be under the Westfield insurance contract.

Finally, FCL argues that it must be an additional insured under the policy because it received a "certificate of insurance" that listed it as an additional insured. However, this

certificate does nothing to modify Westfield's obligations under the contract. First, the

certificate was not issued to FCL by Westfield, but instead appears to have been issued by an

unrelated third party. Its utility in defining Westfield's obligations is therefore questionable at

best. Second and more importantly, the certificate contains a prominent disclaimer that states:

> "THIS CERTIFICATE IS ISSUED AS A MATTER OF
>
> INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE
>
> CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND,
>
> EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES
>
> BELOW."

Illinois courts have previously examined certificates like this, and the effect that such a

certificate has on the interpretation of an insurance cases is governed by two lines of cases. See

*United Stationer's Supply Co. v. Zurich American Insurance Co*, 386 Ill. App. 3d 88, 102 (2008)

(discussing the divergent lines of precedent). If the certificate does not mention the policy and

the terms of the two conflict, then the certificate generally controls coverage. See *id.* (citing

cases). However, "where the certificate refers to the policy and expressly disclaims any

coverage other than that contained in the policy itself," the policy controls. *Id.* (citing cases).

The certificate here falls within the second line of cases. The certificate in this case is

identical to the certificates at issue in both *United Stationer's Supply*, 386 Ill. App. 3d at 103, and

*Pekin Insurance Co. v. American Country Insurance Co.*, 213 Ill. App. 543, 544 (1991). As in

those cases, the certificate here expressly confers no rights on the certificate holder, and it

expressly does not alter Westfield's liability on the policy in any way. *Cf. United Stationer's

Supply*, 386 Ill. App. 3d at 105; *Pekin*, 312 Ill. App. 3d at 547-48. FCL consequently cannot rely

on the certificate in order to establish that it is an additional insured under the policy.

CONCLUSION

For the reasons stated above, FCL is not an additional insured under JAK's insurance policy with Westfield. Consequently, Westfield is not obligated to defend FCL in Oshana's tort action or to indemnify FCL in the event it is found liable to Oshana. We therefore affirm the circuit court's order granting summary judgment to Westfield.

Affirmed.