# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Oshana v. FCL Builders, Inc.*, 2013 IL App (1st) 120851

---

| | |
|---|---|
| Appellate Court Caption | ANWAR OSHANA, Plaintiff, v. FCL BUILDERS, INC., Defendant and Counterplaintiff-Appellant (Suburban Iron Works, Inc., Defendant and Counterdefendant-Appellee). |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-0851 |
| Filed | June 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the injuries suffered by an employee of a sub-subcontractor on a construction project, the doctrine of *res judicata* did not bar the general contractor's counterclaim in the injured employee's tort action alleging that the subcontractor failed to enforce the contract's provision requiring the sub-subcontractor to maintain insurance covering the general contractor, since neither the declaratory judgment action filed by the sub-subcontractor's insurer that resulted in a judgment that it was not required to insure the general contractor, nor the summary judgment in the tort action denying the general contractor's counterclaim for contribution claims against the subcontractor and sub-subcontractor, involved the general contractor's breach of contract claim. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-13001; the Hon. James N. O'Hara, Judge, presiding. |
| Judgment | Reversed. |

Counsel on      Prusik Selby Daley & Kezelis, P.C., of Chicago (John P. Prusik and
Appeal          Frank C. Gradishar, of counsel), for appellant.


Lindsay, Rappaport & Postel, LLC, of Chicago (Joseph P. Postel and
Christopher J. Pickett, of counsel), for appellee.


Panel          PRESIDING JUSTICE LAMPKIN delivered the judgment of the court,
with opinion.

Justices Gordon and Reyes concurred in the judgment and opinion.


# OPINION

¶ 1      Defendant and counterplaintiff FCL Builders, Inc. (FCL), appeals from the circuit court's order dismissing FCL's counterclaim against defendant and counterdefendant Suburban Iron Works, Inc. (Suburban), based on the doctrine of *res judicata*. On appeal, FCL contends that the final judgment in the declaratory judgment action concerning an insurer's obligation to defend or indemnify FCL in the underlying tort action did not bar FCL's breach of contract counterclaim against Suburban in the tort action because neither the parties nor their privies were identical in both actions and there was no identity of cause of action.

¶ 2      For the reasons that follow, we reverse the judgment of the circuit court.


## I. BACKGROUND

¶ 4      FCL was a general contractor that was hired on a construction project. FCL subcontracted out the steel fabrication and erection for the project to Suburban, which in turn further subcontracted out the steel erection to JAK Iron Works, Inc. (JAK). JAK employed plaintiff Anwar Oshana as an ironworker. After Oshana was injured at the construction site, he filed a negligence lawsuit (the tort case) against FCL and Suburban, alleging breach of various duties of care regarding jobsite safety that they allegedly owed to Oshana. After Oshana filed a second amended complaint in 2008, FCL, in 2009, filed a third-party complaint for contribution against JAK and a counterclaim for contribution against Suburban.

¶ 5      Provisions in FCL's subcontract with Suburban addressed Suburban's obligation to obtain a certain amount of commercial general liability (CGL) insurance, which would cover not only Suburban and its employees but also FCL as the general contractor. Moreover, any subcontractors that Suburban might further subcontract with also were required to maintain the same level of CGL insurance and include FCL as an insured under the policy. Relying on those and other contract provisions, FCL turned to Westfield Insurance Company (Westfield), which insured JAK under a CGL policy, for defense and indemnification in the tort case. Westfield, however, refused to either defend or indemnify FCL, asserting that FCL

did not qualify as an additional insured under Westfield's policy with JAK.

¶ 6    Westfield filed a declaratory judgment action against FCL, seeking a declaration that it was not obligated to defend or indemnify FCL in the tort case. Suburban was not a party to the declaratory judgment action. In January 2010, the circuit court held that FCL was not an additional insured on the Westfield policy issued to JAK and granted summary judgment in Westfield's favor. FCL appealed.

¶ 7    Meanwhile, in the tort case, Suburban moved for summary judgment, contending there was no evidence that Suburban had sufficient supervisory, operational or contractual control over JAK's work to give rise to a duty to Oshana. In May 2010, the circuit court granted Suburban's motion for summary judgment against Oshana and FCL on the issues of negligence and contribution. Oshana and FCL appealed.

¶ 8    In March 2011, in the declaratory judgment action, this court affirmed the award of summary judgment in Westfield's favor, holding that FCL was not an additional insured under the policy that Westfield had issued to JAK. *Westfield Insurance Co. v. FCL Builders, Inc.*, 407 Ill. App. 3d 730, 731 (2011). Specifically, this court determined that the plain language of the insurance policy required that, in order for an entity to qualify as an additional insured, JAK and that entity must have agreed in writing in a contract that the entity be added to the policy as an additional insured. *Id*. at 733. This court concluded that there was no evidence in the record that JAK had agreed in writing with FCL for FCL to be an additional insured. *Id*. at 734. FCL argued that it should be deemed an additional insured based, *inter alia*, on the Suburban/JAK contract that incorporated the FCL/Suburban contract. *Id*. at 736. This court, however, stated that the terms of the Suburban/JAK and FCL/Suburban contracts were irrelevant to whether Westfield was obligated to cover FCL as an additional insured under the policy issued to JAK. *Id*. at 735. Rather, the dispositive issue was Westfield's contractual obligations to its insured, and those obligations were controlled by the insurance policy itself. *Id*.

¶ 9    In September 2011, in the tort case, FCL amended with leave of court its counterclaim against Suburban to add a claim of breach of contract. Specifically, FCL alleged that Suburban breached its contract with FCL when Suburban failed to require its subcontractor, JAK, to maintain insurance covering FCL for the construction project at issue in the tort case.

¶ 10   In November 2011, Suburban moved to dismiss, pursuant to section 2-619(a)(4) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(4) (West 2010)), FCL's amended counterclaim on the basis of *res judicata*. Suburban argued that two prior judgments barred FCL's cause of action: (1) the appellate court's 2011 opinion affirming summary judgment in favor of Westfield in the declaratory judgment action, which held that FCL was not an additional insured under Westfield's CGL policy issued to JAK; and (2) the trial court's 2010 summary judgment in the tort case, which was pending on appeal and disposed of Oshana's tort claims and FCL's contribution claim against Suburban.

¶ 11   In January 2012, this court affirmed in the tort case the award of summary judgment in favor of Suburban and against Oshana and FCL. *Oshana v. FCL Builders, Inc.*, 2012 IL App (1st) 101628. Thereafter, in February 2012, the circuit court granted Suburban's motion to dismiss FCL's amended counterclaim on the basis of *res judicata*; the circuit court, however,

did not specify which prior judgment barred FCL's counterclaim. Pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), the circuit court found that there was no just reason to delay the enforcement or appeal of the order. FCL timely appealed.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, FCL argues that the circuit court erred in determining that *res judicata* applied to FCL's breach of contract counterclaim against Suburban. The issue of whether a claim is barred by *res judicata* comprises a question of law, which is subject to *de novo* review by this court. *Agolf, LLC v. Village of Arlington Heights*, 409 Ill. App. 3d 211, 218 (2011). Furthermore, a section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that defeat the claim. *IFC Credit Corp. v. Magnetic Technologies, Ltd.*, 368 Ill. App. 3d 898, 900 (2006). We review a section 2-619 dismissal *de novo*. *Id*.

¶ 14    A prior judgment may have preclusive effects in a subsequent action under the doctrine of either *res judicata* or collateral estoppel. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001).

¶ 15    "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). "Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Id*. "If the three elements necessary to invoke *res judicata* are present, *res judicata* will bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit." *Id.* at 471 (citing *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 490 (1993)). A plaintiff is not permitted to engage in claim splitting. *Hudson*, 228 Ill. 2d at 474. *Res judicata* thereby prevents repetitive lawsuits and protects parties from being forced to bear the burden of relitigating essentially the same claim. *Agolf, LLC*, 409 Ill. App. 3d at 219. The party invoking the defense of *res judicata* bears the burden of demonstrating it applies. *Cload v. West*, 328 Ill. App. 3d 946, 950 (2002).

¶ 16    Under collateral estoppel, the adjudication of a fact or issue in one cause bars relitigation of the same fact or issue in a subsequent suit. *LaSalle Bank National Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 635 (2005). The party asserting collateral estoppel must show: "(1) the issue previously adjudicated is identical to the question presented in the subsequent action; (2) a final judgment on the merits exists in the prior case; and (3) the party against whom estoppel is directed was a party to the prior litigation or is in privity with such a party." *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 558 (2005).

¶ 17    FCL does not contest the fact that the summary judgment in either (1) the declaratory judgment action, which held that Westfield did not owe a duty to defend or indemnify FCL, or (2) the tort case, which disposed of Oshana's tort claims and FCL's contribution claim against Suburban, constitutes a final judgment on the merits that was rendered by a court of competent jurisdiction. FCL, however, argues that two elements of *res judicata* are missing:

-4-

an identity of parties or their privies and an identity of cause of action.

¶ 18    First, we address Suburban's argument that FCL had forfeited review of the issues on appeal. Specifically, Suburban argues that FCL has failed in its opening appellant's brief to challenge the summary judgment in the tort case as a possible basis for the circuit court's determination that FCL's breach of contract counterclaim is barred under *res judicata*. According to Suburban, FCL has thereby conceded that the summary judgment in the tort case precludes that counterclaim and was a proper basis for dismissal. We disagree. The record indicates that FCL addressed all relevant issues in the proceedings before the circuit court. Furthermore, FCL has responded in its reply brief to Suburban's argument about the summary judgment in the tort case. Specifically, FCL states that the summary judgment in the tort case, which addressed Suburban's liability for Oshana's injuries, has no legal effect on FCL's breach of contract counterclaim against Suburban for its alleged failure to procure insurance for FCL. In addition, forfeiture is a limitation on the parties and not the court, the issue raised concerns a clear question of law, and we choose to address the merits of FCL's appeal. *People v. Tomczak*, 395 Ill. App. 3d 877, 879 (2009).

¶ 19                              A. Declaratory Judgment Action

¶ 20                           1. Identity of Parties or Their Privies

¶ 21    FCL argues that *res judicata* does not apply because the declaratory judgment action did not involve the same parties or their privies as the tort case. FCL contends that Suburban, which had the burden to prove *res judicata*, failed to establish that Westfield represented the same legal interest as Suburban in the declaratory judgment action.

¶ 22    Suburban responds that even though it was not a party in the declaratory judgment action, it was in privity with Westfield because Suburban is an additional insured on the policy Westfield issued to JAK and Westfield has at all times provided a defense and indemnity to Suburban, without a reservation of rights. Suburban contends it is in privity with Westfield because they are an insured and insurer with respect to the tort lawsuit, Westfield has at all times provided a defense to Suburban, and Westfield has agreed to indemnify Suburban against any judgment entered in the tort case. Suburban argues that it had a substantial interest in the declaratory judgment action and benefitted from the ruling that FCL was not an additional insured on the Westfield/JAK policy because Suburban no longer had to share the policy limits with FCL.

¶ 23    "A nonparty may be bound pursuant to privity if his interests are so closely aligned to those of a party that the party is the 'virtual representative' of the nonparty." *City of Chicago v. St. John's United Church of Christ*, 404 Ill. App. 3d 505, 513 (2010) (quoting *City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n*, 362 Ill. App. 3d 556, 563 (2005)). Privity generally exists when parties adequately represent the same legal interests. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992) (in determining whether privity exists, the identity of the interest controls, not the nominal identity of the parties). "There is no generally prevailing definition of 'privity' that the court can apply in all cases; rather, determining privity requires careful consideration of the circumstances of each case." *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 403

Ill. App. 3d 179, 190 (2010).

¶ 24 Suburban cites *Preferred America Insurance v. Dulceak*, 302 Ill. App. 3d 990 (1999), for the proposition that "insured and insurers share a special relationship: they are in privity of contract." While we agree with the soundness of the general proposition, it is of no avail to Suburban in the instant case. In *Preferred America*, the insurer had provided a defense to its insured driver, who was sued for negligence in an automobile collision case (prior case). *Id*. at 992-93. The insurer obtained counsel for its insured driver, whom counsel sought to show was not at fault. The jury, however, found the insured driver 100% liable for the accident in question. Thereafter, the insured driver's wife brought an uninsured motorist claim against her husband (present case). The insurer filed a complaint for declaratory relief against the wife, seeking a judgment that collateral estoppel did not bar the insurer from relitigating all issues concerning liability in the present case.

¶ 25 The court, which found no conflict of interest between the insurer and its insured driver in the prior case, concluded that they were in privity and, thus, the insurer was estopped from relitigating any issue or defense with respect to its insured driver's liability. *Id*. at 995. The court stated:

"Insureds and insurers share a special relationship: they are in privity of contract. [Citation.] When the insurer retains the attorney to defend the insured, the attorney represents both the insured and the insurer in furthering the interests of each. [Citation.] Ordinarily, since the interests of the insurer and the insured are harmonious, there is no conflict and the attorney is able to exercise independent judgment for both clients. *** ***

The nonliability of the insured is potentially the most effective bar to any policy claims against the insurer. That is what [the insurer, First American Insurance,] undertook to show in defending its insured. ***

Where one party is liable to indemnify another against a particular loss, either by law or by contract, the primary liability is upon the party indemnifying. In such a case, the party bound to indemnify is in privity with the party to be indemnified, and the indemnifying party therefore has a direct interest in defending any suit whereby there may be a recovery against the party indemnified as to the subject matter of the indemnity. [Citations.] 'The party to be indemnified, moreover, is, manifestly, directly interested in having him defeat all recovery in such suit, and so their respective interests and duties in respect of such suit must be the same.' [Citation.]" *Id*. at 995-96.

The court noted, however, the reason for this rule concerning insurer and insured privity "does not exist when there is no identity of interests between the insured and the insurer in the original tort action." *Id*. at 997.

¶ 26 Suburban's reliance on *Preferred America* is misplaced. Although privity exists between Westfield and Suburban in the tort action, *Preferred America* does not support Suburban's claim of privity with Westfield in the declaratory judgment action because Westfield and Suburban did not share an identity of interests in the declaratory judgment action. Specifically, Westfield had an interest to defeat FCL's claim for defense and indemnification under the JAK policy. That interest was in conflict with Suburban's interest because

-6-

Suburban allegedly had a contractual obligation to require JAK to provide insurance coverage for FCL. Contrary to the situation in *Preferred America*, Westfield did not, in the declaratory judgment action, undertake to show that Suburban, as Westfield's additional insured, was not liable for any failure to procure insurance coverage for FCL. Accordingly, Suburban was not so identified in interest with Westfield that Westfield represented the same legal right in the declaratory judgment action.

¶ 27    Suburban argues that it benefitted from Westfield's success in the declaratory judgment action because Suburban did not have to share JAK's coverage with FCL. Even assuming that Suburban obtained such a benefit, that is not dispositive of the issue of privity for purposes of *res judicata*, which requires an identity of interests.

¶ 28    Illinois courts have relied on the Restatement (Second) of Judgments for guidance in defining privity. *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 559 (2009). "The Restatement (Second) of Judgments explains that ' "privity" refers to a cluster of relationships, [citation], under which the preclusive effects of a judgment extend beyond a party to the original action and apply to persons having specified relationships to that party.' " *Id*. (quoting Restatement (Second) of Judgments, Introduction at 1 (1982)). Section 75 of the Restatement (Second) of Judgments sets forth three general categories of relationships that may establish privity: (1) relationships that are "explicitly representative" (*e.g.*, trustee, class representative designated by a court); (2) "substantive legal relationships [in which one party to] the relationship is treated as having the capacity to bind the other to a judgment in an action to which the latter is not a party" (*e.g.*, co-obligors, parties who are vicariously liable for one another, bailees and bailors, co-owners of property, assignees and assignors, the promisee and intended beneficiary of a contract, corporations and their officers, directors and shareholders, and members of partnerships); and (3) "successors in interest to property." Restatement (Second) of Judgments § 75 cmt. a, at 210 (1982). See generally Restatement (Second) of Judgments §§ 41-42, 45-61, 43 (1982). See also *John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d at 559-60 (discussing the Restatement (Second) of Judgments).

¶ 29    The relationship between Suburban and Westfield in the declaratory judgment action does not fall into any of the three general categories of relationships that may establish privity. However, the relationship between FCL and Suburban does fall into the second relationship category, *i.e.*, that of promisee and intended beneficiary to a contract. See *John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d at 561-62 (where an insurer obtained a declaration that it was not obligated to defend or indemnify a purported additional insured under a liability policy, there was privity between the purported additional insured and the insured because the purported additional insured adequately represented the insured's interests in the declaratory judgment action).

¶ 30    The promisee and intended beneficiary to a contract relationship is described by section 56 of the Restatement, which states:

> "When a contract between two persons creates an obligation in favor of another person as an intended beneficiary:
>
> ***

(2) A judgment against the third party beneficiary in an action on the obligation to him terminates the promisor's obligation to the promisee." Restatement (Second) of Judgments § 56(2) (1982).

¶ 31 Here, where Suburban allegedly was required to procure insurance for FCL from Westfield, the insurer of Suburban's subcontractor JAK, Suburban is the promisee, Westfield is the promisor, and FCL is an intended third-party beneficiary of the insurance contract. See Restatement (Second) of Contracts § 2 (1981) (defining promise, promisor, promisee and beneficiary). The declaratory judgment action between Westfield and FCL, which determined that Westfield, as promisor, did not have a duty to insure and defend FCL, as third-party beneficiary, was a judgment that terminated Westfield's obligation to Suburban, as promisee. See *Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d at 560. Under the second premise of section 56, the determination that Westfield did not have a duty to insure FCL also terminated Westfield's obligation to Suburban to provide additional insured coverage to FCL for the job in question. Restatement (Second) of Judgments § 56(2) & Illustration 4 (1982); see also *Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d at 560. Accordingly, the judgment that FCL was not covered by JAK's policy has a preclusive effect on Suburban's ability to relitigate that issue, not because Suburban is bound by the judgment, but because Suburban could have no cause of action against Westfield for failure to cover FCL. See Restatement (Second) of Judgments § 56 cmt. a, at 73-74 (1982).

¶ 32 For the foregoing reasons, we conclude that Suburban was not in privity with Westfield in the declaratory judgment action.

¶ 33                    2. Identity of Cause of Action

¶ 34 FCL also argues, and we agree, that *res judicata* does not apply to bar FCL's breach of contract counterclaim because there was no identity of cause of action between the declaratory judgment action and the tort action. Illinois has adopted the transactional test in determining whether an identity of cause of action exists for purposes of *res judicata*. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 309-11 (1998).

"Under this test, claims are part of the same cause of action if they arise from the same transaction or series of connected transactions. [Citation.] Subsequent claims may be barred if they originate from a single group of operative facts. [Citation.] This proposition applies regardless of whether the claims assert different theories of relief or are based on evidence that does not substantially overlap, as long as they arise from the same transaction. [Citation.]

                            * * *

In determining whether claims are part of the same cause of action, *** we consider the claims in factual rather than evidentiary terms. [Citation.] We must examine the facts that give rise to the plaintiff's right to relief [citation] and assess whether they are linked in a manner such that they are part of a single transaction. The factors relevant to ascertaining whether they are so linked include their relation in time, space, origin, and motivation, whether they form a convenient trial unit, and whether their treatment as a single unit conforms to the parties' expectations and business usage or understanding.

-8-

[Citation.] The test is to be applied pragmatically. [Citations.]" *Cload*, 328 Ill. App. 3d at 950-51.

¶ 35    It is clear that the claims asserted in the previous declaratory judgment action and the breach of contract counterclaim in the instant case do not arise from a single group of operative facts. The claims do not share a close temporal, spatial, origin, or motivation relationship. In the declaratory judgment action, the coverage dispute between FCL and Westfield involved the construction of the terms of the additional insured endorsement clause in the policy Westfield had issued to JAK. Specifically, Westfield asserted that FCL did not qualify as an additional insured on JAK's policy because there was no written agreement between JAK and FCL for FCL to be an additional insured. In contrast, the dispute at issue in FCL's counterclaim arose from facts involving Suburban's alleged failure to abide by the terms of its separate contract with FCL. That contract addressed, *inter alia*, the delegation of work at a construction site and Suburban's obligation to provide FCL with insurance coverage from any subsequent subcontractors.

¶ 36    Furthermore, when FCL alleged its breach of contract counterclaim against Suburban, FCL was not attempting to relitigate the previously adjudicated issue of additional insured coverage under the JAK policy. Instead, FCL alleged an entirely new cause of action that had arisen. The events that gave rise to Westfield's contractual obligations to its insured, JAK, pursuant to its insurance policy and any breach by Suburban, a subcontractor, of its contractual obligations to FCL, the general contractor, are not sufficiently related in time, space, origin, or motivation to constitute a single transaction. Because FCL's breach of contract claim against Suburban does not arise out of the same core of operative facts as FCL's previous claim for coverage as an additional insured under JAK's policy, there is not an identity of causes of action for purposes of *res judicata*.

¶ 37    In addition, the events that constitute the basis of the declaratory judgment action and breach of contract counterclaim do not form a convenient trial unit. When this court efficiently and expeditiously construed the terms of the additional insured endorsement of the Westfield policy and determined that FCL was not an additional insured under the terms of that policy, this court refused to consider on the basis of relevancy any contractual obligations between FCL and Suburban. *Westfield Insurance Co.*, 407 Ill. App. 3d at 735. This court never considered whether Suburban had breached its contract with FCL by failing to procure insurance.

¶ 38    Suburban argues that FCL is now precluded from raising the breach of contract counterclaim against Suburban because FCL could have raised it as part of the declaratory judgment action. This argument lacks merit. In Illinois, counterclaims are generally permissive rather than mandatory. See 735 ILCS 5/2-608(a) (West 2002); *Marsh v. Nellessen*, 235 Ill. App. 3d 998, 1001 (1992). Thus, a defendant generally may raise his or her claim against the plaintiff by way of a counterclaim or by way of a separate action. *Marsh*, 235 Ill. App. 3d at 1001. However, if the defendant's claim involves the same operative facts as the plaintiff's claim, *res judicata* may bar the defendant from raising his or her claim in a subsequent action. *Torcasso v. Standard Outdoor Sales, Inc.*, 232 Ill. App. 3d 500, 503-04 (1992), *rev'd on other grounds*, 157 Ill. 2d 484 (1993). Specifically, *res judicata* bars a subsequent action if successful prosecution of that action would in effect

nullify the judgment entered in the initial action. Restatement (Second) of Judgments § 22(2)(b) (1982); *Carey v. Neal, Cortina & Associates*, 216 Ill. App. 3d 51, 58 (1991) (describing subsection 22(2)(b) of the Restatement as a " 'common law' rule of compulsory counterclaim").

¶ 39 Neither the successful nor unsuccessful prosecution of FCL's current breach of contract counterclaim against Suburban would nullify the previous declaratory judgment. Furthermore, as discussed above, the counterclaim does not involve the same operative facts as the earlier declaratory judgment. FCL's breach of contract claim was evident after the court ruled in the declaratory judgment action that FCL was not an additional insured under the policy Westfield issued to JAK. The narrow purpose of the declaratory judgment action was to settle the controversy of FCL's status as an additional insured before Westfield violated any contractual obligation. See *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 205-06 (1991). Moreover, Suburban was not a party to the declaratory judgment action, did not seek to intervene in that matter, and its presence was not necessary in the declaratory judgment action. In the declaratory judgment action, the court was obviously able to reach a final judgment without the presence of Suburban, and FCL and Westfield never suggested that their interests were somehow compromised by Suburban's absence. See *John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d at 563.

¶ 40 Accordingly, we conclude that an identity of cause of action does not exist between the declaratory judgment action and FCL's present counterclaim and, thus, FCL's counterclaim is not barred by *res judicata*.

¶ 41                              B. Summary Judgment in the Tort Action

¶ 42 Suburban argues that FCL's counterclaim is also barred by *res judicata* due to the circuit court's May 2010 award of summary judgment in favor of Suburban in the tort case. That final judgment disposed of both Oshana's tort claim and FCL's contribution claim against Suburban, and this court affirmed that judgment in January 2012.

¶ 43 Suburban's argument lacks merit. Although there is an identity of parties in the May 2010 summary judgment and the breach of contract counterclaim, there is no identity of cause of action between that summary judgment and the counterclaim. Specifically, Oshana's claim and FCL's contribution counterclaim against Suburban alleged, in tort, Suburban's negligence concerning its failure to supervise and failure to warn. In contrast, FCL's present breach of contract counterclaim alleged that Suburban failed to abide by contract provisions that required Suburban to ensure that its subcontractors obtained CGL insurance coverage for FCL. Moreover, when FCL alleged breach of contract against Suburban in its amended counterclaim, FCL was not attempting to relitigate the previously adjudicated issue of Suburban's liability in tort for Oshana's injuries. Instead, FCL alleged an entirely new cause of action that arose upon the adjudication of the declaratory judgment action.

¶ 44                                      III. CONCLUSION

¶ 45 FCL's breach of contract counterclaim was not litigated in the prior declaratory judgment action and May 2010 summary judgment, and *res judicata* does not bar FCL's breach of

-10-

contract counterclaim. Accordingly, the judgment of the circuit court is reversed.

¶ 46        Reversed.